**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------X
TRUSTEES OF THE PAVERS AND ROAD
BUILDERS DISTRICT COUNCIL WELFARE,
PENSION, ANNUITY AND APPRENTICESHIP,
SKILL IMPROVEMENT AND SAFETY FUNDS,

                              Plaintiffs,                         **REPORT &**
                                                                        **RECOMMENDATION**

          - against -

                                                                11-CV-01542 (DLI) (RER)
TECHNICAL CONSTRUCTION
SERVICES, INC.,

                            Defendant.
---------------------------------------------------------------------X

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiffs, Trustees of the Pavers and Road Builders District Council Welfare, Pension,

Annuity and Apprenticeship, Skill Improvement and Safety Funds (the "Funds"), bring this

action against Technical Construction Services, Inc. ("Technical") for violations of the Employee

Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.*, and

allege that Technical failed to make required contributions to the Funds. In light of defendant's

failure to appear or answer, Plaintiffs moved for default judgment. (Dkt. No. 4.) The Honorable

Dora L. Irizarry referred this matter to me for a report and recommendation. (Dkt. Entry,

5/25/2011.) For the reasons set forth below, I respectfully recommend that default judgment be

entered against Technical in the amount of $49,069.02.

## BACKGROUND

Plaintiffs are fiduciaries of the Funds, which are multiemployer employee benefit plans

within the meaning of ERISA. (Compl. ¶ 4.); 29 U.S.C. § 1002(3), (37). Defendant entered into

a collective bargaining agreement with the Highway, Road and Street Construction Laborers

Local Union 1010 of the District Council of Pavers and Road Builders of the Laborers'

International Union of North America, AFL-CIO ("Local 1010") for the period July 1, 2005

through June 30, 2008 (the "CBA"). (Compl. ¶ 7; Exh. A.)[1]  Article XX of the CBA states that

the agreement "shall continue in effect until and including June 30, 2008, and during each year

thereafter unless . . . [Technical or Local 1010 give] written notice of termination or proposed

changes."  Neither Technical, nor Local 1010 has served written notice of termination, thus

Technical remains bound by the terms of this CBA.  (Declaration of Francisco Fernandez in

Support of Plaintiffs' Motion for Default Judgment ("Fernandez Decl."), dated 5/20/11, ¶¶ 7-8;

Exh. A at 35.)

Under the terms of the CBA, Technical is required to make payments to the Funds "on or

before the thirty-fifth (35th) day after the close of the month in which the hours were worked."

(Exh. A at 20.)  The CBA sets forth contribution rates to calculate the amount due to each fund.

(Compl. ¶ 9; Fernandez Decl. ¶ 9.)  Remittance reports that Technical submitted to the Funds

reflect $40,809 in contributions due to the Funds from October 2010 through December 2010.

(Compl. ¶ 11; Declaration of Joseph Montelle in Support of Plaintiffs' Motion for Default

Judgment ("Montelle Decl."), dated 5/20/11, ¶ 5.)  Technical has failed to remit these

contributions to the Funds.  (Compl. ¶ 12.)

On March 30, 2011, plaintiffs brought this action against Technical to collect the

delinquent contributions pursuant to Sections 502(a)(3) and 515 of ERISA, as amended, 29

U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the Labor Management Relations Act of 1947

("LMRA"), as amended, 29 U.S.C. § 185.  (Compl. ¶ 1.)  Following service of the summons and

---

[1] Exhibits referenced herein are those attached to plaintiff's motion for default judgment.

complaint, Technical failed to timely respond or otherwise appear. On May 24, 2011, plaintiffs

filed a motion for default judgment seeking recovery of the unpaid contributions, interest,

liquidated damages, and reasonable attorneys' fees, expenses and costs. (Dkt. No. 4.) The Clerk

of the Court noted defendant's default the same day. (Dkt. No. 5.) Technical has neither

appeared in the action, nor opposed the motion for default judgment.

## DISCUSSION

I.      **Liability**

A party in default is deemed to admit all well-pleaded factual allegations of liability set

forth in the complaint. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155,

158 (2d Cir. 1992). Nevertheless, "it remains for the court to consider whether the unchallenged

facts constitute a legitimate cause of action, since a party in default does not admit conclusions of

law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (quoting *Leider*

*v. Ralfe*, No. 01 Civ. 3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004)).

Under Section 515 of ERISA,

> [e]very employer who is obligated to make contributions to a multi-employer plan
> under the terms of the plan or under the terms of a collectively bargained agreement
> shall, to the extent not inconsistent with the law, make such contributions in
> accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.[2] The CBA requires Technical to make contributions to the Funds at the rates

provided therein. (Compl. ¶ 9.) Plaintiffs allege that Technical is a party to the CBA and that

---

[2] A plan member's contractual duty to make contributions to multiple employer plans
under Section 515 of ERISA is enforceable in accordance with Section 502, which allows plan
fiduciaries to bring civil actions to redress violations or enforce the provisions of the CBA. 29
U.S.C. §§ 1132(a)(3)(B); 1132(d)(1).

Technical failed to remit required contributions for the period October 2010 through December 2010. (Compl. ¶¶ 7-12.) These allegations establish Technical's liability for violating ERISA.

## II.    Damages

"While a party's default is deemed to constitute a concession of all well-pleaded allegations of liability, it is not considered an admission of damages." *Greyhound*, 973 F.2d at 158. Rather, the court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnaise Sec. (U.S.A.) v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Although a court may conduct a full evidentiary hearing, it may choose instead to rely on affidavits and other documentary support in order to ensure there is a basis for the damages sought. *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (citing *Fustok v. ContiCommodity Serv., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *see also* FED. R. CIV. P. 55(b)(2). In support of damages, plaintiffs submitted: declarations by attorney Charles R. Virginia, Funds' Administrator Joseph Montelle, and officer of Local 1010 Francisco Fernandez; Technical's remittance reports for October, December, and November 2010; the relevant CBA; the Funds' collection policy (the "Policy"); and a schedule of attorneys' fees and costs. Based on a review of plaintiffs' submissions, which are undisputed by Technical, I find the evidence sufficient to ascertain damages. Accordingly, a hearing is not warranted.

A plaintiff who has established liability under Section 515 of ERISA may recover the unpaid contributions, the interest on the unpaid contributions, liquidated damages in an amount equal to the interest or the amount of liquidated damages provided for by the plan, whichever is greater, plus reasonable attorneys' fees and costs related to the action, and other legal or equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2). Plaintiffs seek: (1) $40,809 in

delinquent contributions; (2) $1,498.12 in interest; (3) $8,161.80 in liquidated damages; (4)

$2,681 in attorneys' fees and costs.  (Montelle Decl. ¶ 10; Virginia Decl. ¶¶ 11-12.)

     1.     Unpaid Contributions

To determine the amount of contributions owed to the Funds, contribution rates set forth

in the CBA are multiplied by the number of hours worked by (or paid to) Local 1010 members

employed by Technical.  (Fernandez Decl. ¶ 9.)  Technical failed to remit payment to the Funds

for October, November, and December 2010.  Plaintiffs submitted statements from Technical

detailing the number of hours worked by (and paid to) Local 1010 members during the relevant

time period and the hourly contribution rates in effect under the current CBA.[3]  (Dkt. No. 7.)

Technical's reports indicate $40,809 was due for October, November, and December 2010:

| For the Period Ending October 26, 2010 | | | |
|---|---|---|---|
| **Funds** | **Hours** | **Rate** | **Total** |
| Pavers Welfare Fund | 522 | $13.90 | $7,255.80 |
| Pavers Pension Fund | 522 | $9.10 | $4,750.20 |
| Laborers Training Fund | 522 | $0.90 | $469.80 |
| Pavers Annuity Fund | 534 | $5.00 | $2,670.00 |
| | | **Total:** | **$15,145.80** |

---

[3] Initially, plaintiffs submitted an internal document purporting to identify the unpaid contributions listed on Technical's monthly remittance reports. (Montelle Decl. ¶ 5; Exh. B.)  I subsequently ordered plaintiffs to provide further documentary evidence for their damages calculation because the internal document was too faint to read, and also because it gave only total amounts for each month without indicating the hours worked (or paid) and what rates were used to reach the total amounts.

| For the Period Ending November 30, 2010 | | | |
|---|---|---|---|
| **Funds** | **Hours** | **Rate** | **Total** |
| Pavers Welfare Fund | 520 | $3.90 | $7,228.00 |
| Pavers Pension Fund | 520 | $9.10 | $4,732.00 |
| Laborers Training Fund | 520 | $0.90 | $468.00 |
| Pavers Annuity Fund | 520 | $5.00 | $2,600.00 |
| | | **Total:** | **$15,028.00** |

| For the Period Ending December 28, 2010 | | | |
|---|---|---|---|
| **Funds** | **Hours** | **Rate** | **Total** |
| Pavers Welfare Fund | 368 | $13.90 | $5,115.20 |
| Pavers Pension Fund | 368 | $9.10 | $3,348.80 |
| Laborers Training Fund | 368 | $0.90 | $331.20 |
| Pavers Annuity Fund | 368 | $5.00 | $1,840.00 |
| | | **Total:** | **$10,635.20** |

Based on my review of Technical's remittance statements, I recommend plaintiffs be awarded the requested $40,809 in delinquent contributions for October to December 2010.

2.      Interest on Unpaid Contributions

Under the CBA, the interest on unpaid contributions to the Funds accrues at the rate of 10% per annum. (Exh. A at 22.)  With a total of $40,809 of unpaid contributions, interest accrued at a per diem rate of $11.18. (Montelle Decl. ¶ 8.)  Plaintiffs correctly calculate the

interest on the unpaid contributions to be $1,498.12 (134 days multiplied by $11.18).[4] (*Id.*)

Accordingly, plaintiffs should be awarded $1,498.12 in interest on the unpaid contributions.

        3.      <u>Liquidated Damages</u>

ERISA provides for an award of liquidated damages in an amount equal to the greater of: (1) the interest on the unpaid contributions, or (2) the liquidated damages provided for under the plan in an amount not exceeding 20% of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). Here, plaintiffs calculate liquidated damages equal to 20% of the unpaid contributions. However, by its express terms, the CBA provides for liquidated damages at 10%. (Exh. A at 22.)

Plaintiffs provided a copy of their Collection Policy, which states that "employers shall be liable for the payment of delinquent Contributions . . . plus liquidated damages of twenty percent (20%) of the amount of delinquent Contributions owing." (Exh. C at 3.) The Policy is dated September 2, 2009 and signed by the Trustees of the Funds. It is not clear, however, when the Policy took effect and whether and how it modified the express terms of the CBA. Since ERISA mandates a liquidated damages award in the amount provided for "under the plan," *i.e.* CBA, and plaintiffs have not provided any evidence as to whether the terms of the Policy override the terms of the plan, plaintiffs may only recover liquidated damages at the rate of 10%.[5] *See e.g.*, *Masino*

---

    [4] Plaintiffs calculated interest from December 5, 2010 (the first date the unpaid contributions became due and owing) through May 18, 2011. Plaintiffs miscalculate this period of time as 134 days. By my calculations, it amounts to 164 days. Since interest may be calculated from a "single reasonable intermediate date when damages are incurred over a period of time," I calculate interest from January 4, 2010, which is the midpoint between the October and December 2010 contribution due dates. *Finkel v. Triple A Group, Inc.*, 708 F. Supp. 2d 277, 287 (E.D.N.Y. 2010); *see also* N.Y.C.P.L.R. 5001(b). As such, plaintiffs are entitled to interest for 134 days in the amount they correctly, albeit inadvertently, calculated.

    [5] Although I recommend plaintiffs be awarded liquidated damages at a rate of 10% pursuant to the CBA, I will amend my recommendation if within 7 days of this Report and

*v. Integrated Structures Corp.*, No. 10-CV-1629, 2011 WL 1343892, at *5 (E.D.N.Y. Mar. 30, 2011) (declining to award liquidated damages of 20% set forth in a collection policy without sufficient evidence as to when the policy became effective or whether it modified the terms of the plan). Therefore, I respectfully recommend plaintiffs be awarded a total of $4,080.90 in liquidated damages.

    4.     <u>Attorneys' Fees and Costs</u>

Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs incurred in this action. 29 U.S.C. § 1132(g)(2)(D). The Second Circuit utilizes the "presumptively reasonable fee" formula for determining whether requested attorneys' fees are reasonable. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany and Albany Cnty. Bd. of Elections,* 522 F.3d 182, 190 (2d Cir. 2008). This method of calculating attorneys' fees entails multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.* at 186 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). A reasonable hourly rate can be determined "by reference to fees in the community in which the action is pending and to the skill and experience of the attorneys who worked on the matter." *Tr. of United Teamster Fund v. Ronnie's Truck Serv., Inc.*, No. 07-CV-4456, 2008 WL 2686993, at * 3 (E.D.N.Y. July 8, 2008) (citing *Luciano v. Olsten Corp.*, 109 F.3d 111, 115-16 (2d Cir. 1997)). The court should be guided by "the rate a paying client would be willing to pay," while bearing in mind that a

---

Recommendation, plaintiffs submit sufficient proof and explanation as to how and when the policy modified the express terms of the CBA. *See Integrated Structures Corp.*, 2011 WL 1343892, at *5 (delaying final judgment for thirty days to allow plaintiffs an opportunity to provide supplemental briefing with respect to the efficacy of their collection policy).

client "wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d. at 190.

Second, the court must determine the reasonableness of the hours expended on the litigation by assessing "the value of the work product of the specific expenditures to the client's case." *Tr. of the Road Carriers Local 707 Welfare Fund v. Goldberg,* No. 08-CV-0884, 2009 WL 3497493, at *9 (E.D.N.Y. Oct. 28, 2009). To aid the court, the movant must provide the court with "contemporaneous time records" specifically detailing "the date, the hours expended, and the nature of the work done" by each attorney. *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Any hours the court deems "excessive, redundant or otherwise unnecessary" should be excluded from the calculation of attorneys' fees. *Labarbera*, 752 F. Supp. 2d at 277 (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).

In support of their request for attorneys' fees, plaintiffs submit a declaration of their lead attorney, Charles R. Virginia. Attached to the declaration are detailed billing entries identifying the dates, rates, hours spent, and work performed by counsel. (Exh. D.) The firm Virginia & Ambinder, LLP, who represents plaintiffs, charged $200 per hour for associates Kenneth Marx and Judy Wong, and $80 per hour for legal assistants Jesse Barton and Maria Tokarz. (Virginia Decl. ¶¶ 8-10.) The combined hours spent on the litigation amount to 12.60 hours (10.40 hours by the associates, 2.2 hours by the legal assistant). (*Id.* ¶ 11.) Based on the billing entries, that time was spent primarily reviewing the CBA and the delinquent contribution amounts, corresponding with plaintiffs and the Court, and drafting and revising the complaint and default judgment application. (Exh. D.) I find the fees of $2,256 and the 12.60 hours expended by the

associates and legal assistants to be reasonable. *See, e.g.*, *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 354 (E.D.N.Y. 2009) (awarding $2,464 in attorneys' fees for 8.8 hours of work at $280 per hour in an ERISA action to recover unpaid contributions); *Jacobson v. Peterbilt Elec. Contracting, Inc.*, 553 F. Supp. 2d 211, 216 (E.D.N.Y. 2008) (noting that courts in the Eastern District have awarded senior associates $200-$250 per hour and paralegals $75 per hour).

Plaintiffs also request a total of $425 in costs which consists of a $350 filing fee and a $75 service of process fee. (Virginia Decl. ¶ 12.) In a successful action to recover delinquent contributions, an award of reasonable costs is mandatory and courts generally award the plaintiff "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients." *Goldberg*, 2009 WL 3497493, at *10. I find both the filing fee and the service of process fee to be reasonable. Accordingly, I respectfully recommend plaintiffs be awarded the requested attorneys' fees and costs, for a total of $2,681.

**CONCLUSION**

Based on all of the foregoing, I respectfully recommend that default judgment be entered against Technical in the amount of $49,069.02, comprised of: (1) $40,809 in unpaid contributions for the period October 2010 through December 2010; (2) $1,498.12 in interest on the unpaid contributions from January 4, 2010 through May 18, 2011; (3) $4,080.90 in liquidated damages; and (4) $2,681 in attorneys' fees and costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court and the Honorable Dora L. Irizarry within fourteen days of receipt hereof. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir.

1989). Plaintiffs are hereby directed to serve copies of this Report and Recommendation upon

defendant, and to promptly file proof of service with the Court.


Dated: August 1, 2011
      Brooklyn, New York


*Ramon E. Reyes, Jr.*

**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**